

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the order of the Court.**

Signed October 21, 2005             United States Bankruptcy Judge

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| WALTER PETER LAZDOWSKI JR., | § | CASE NO. 05-50446-RLJ-13 |
| | § | |
| DEBTOR | § | |

### MEMORANDUM OPINION

    The debtor, Walter Lazdowski ("Lazdowski"), objects to the claim of Century 21 John Walton Realtors ("Century 21") in the amount of $4,080. The claim is based on a six percent real estate commission allegedly earned by Century 21 under a pre-petition Real Estate Listing Agreement entered into between Century 21 and Lazdowski. Lazdowski objects to the claim because the sale never occurred given his decision not to go forward with the sale. Century 21 contends its claim should be allowed as it procured a buyer in accordance with the listing agreement and that it is entitled to the commission despite the sale having not closed. Though the claim was filed as a "priority" claim, at hearing on the motion, Century 21, through counsel, clarified that it was seeking allowance of its claim as a general unsecured claim rather than an

administrative priority claim.[1]

The Court has jurisdiction over this matter under 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## Statement of Facts

On March 25, 2005, Lazdowski signed a Residential Real Estate Listing Agreement with Century 21. Century 21, as broker under the listing agreement, was given an exclusive right to sell Lazdowski's house located at 6413 30th Street, Lubbock, Texas. The agreement set a listing price of $68,000; the term of the agreement was March 25, 2005 to September 30, 2005. The broker's fee was six percent of the sales price.

Three weeks after signing the listing agreement, on April 13, 2005, Lazdowski filed bankruptcy under chapter 7 of the Bankruptcy Code. Myrtle McDonald was appointed as interim trustee responsible for administering Lazdowski's non-exempt assets. Lazdowski listed the house on his bankruptcy schedules as having a value of $58,839 and securing a claim in the amount of $42,812.71 held by Wells Fargo Mortgage. He also stated that his interest in the house was a one-half undivided interest. He further asserted an exemption claim to the house under section 522(d)(5) of the Bankruptcy Code, the so-called "wild card" exemption, to the extent of $9,681.91. His schedules indicate that he proposed to surrender the house subject to his exemption claim.

At the time the bankruptcy was filed Lazdowski was renting the house with Century 21

---

[1] Century 21, in its response to the claim objection, invoked section 523(a)(2)(A) of the Bankruptcy Code, alleging that its claim arose from false pretenses, a false representation, or actual fraud on Lazdowski's part. This issue was not raised at hearing on the claim objection and Century 21 has not asserted by a separate adversary proceeding an objection to dischargeability. In light of such circumstance, as well as the conversion of this case to chapter 13, the Court construes Century 21 to have abandoned any section 523(a)(2)(A) claim as part of its defense to the claim objection.

serving as leasing agent, which it had been since 1994. The renters moved out April 30, 2005, and Lazdowski moved into the house on May 1, 2005.

In mid-May 2005, Century 21 procured a buyer for the house. The buyer made an earnest money deposit on May 16, 2005. By then, Lazdowski had apparently changed his mind about selling the house. On May 19, 2005, Lazdowski, who had defaulted on his mortgage payments, cured all past due mortgage payments and paid attorney's fees of $2,500 that had been incurred by the mortgagee Wells Fargo. Century 21 contends it had no knowledge of Lazdowski's bankruptcy until mid-May of 2005.

The issue regarding the sale of the house was referred to the trustee, Myrtle McDonald. On May 25, 2005, she filed a motion seeking approval of a sale pursuant to a contract of sale of the same date. The contract of sale contemplated a sale to Michael James Greener for a sales price of $68,000, the purchaser procured by Century 21 in mid-May 2005. The contract is a standard form "One to Four Family Residential Contract (Resale)" promulgated by the Texas Real Estate Commission. The contract specifically provides, by terms added to the form contract, that the sale was subject to approval of the bankruptcy court. By order of this Court entered May 31, 2005, the trustee obtained approval to employ Jerry George of Century 21 to sell the house.

Having decided to keep the house, Lazdowski filed his motion, on June 6, 2005, to convert his case to a chapter 13 proceeding with the goal of retaining the house and maintaining current payments on the house. The case was converted to chapter 13 by order entered June 8, 2005. The trustee sought a reconsideration of the conversion. At a hearing held on June 22, 2005, the Court, recognizing Lazdowski's absolute right to convert to chapter 13, and the termination of the trustee's authority to administer the estate, *i.e.*, to sell the house, given the

conversion, denied the trustee's motion to sell. The trustee then withdrew her motion for reconsideration of the order of conversion.

## Discussion

This case presents the Court with a curious sequence of events. The listing agreement was entered into by Lazdowski and Century 21 three weeks before the bankruptcy was filed. Century 21 was not provided with notice of Lazdowski's initial chapter 7 bankruptcy filing. Lazdowski's bankruptcy schedules, reflecting his circumstance as of the time of filing, are consistent with an intent to sell the house. Lazdowski described his interest as a one-half undivided interest and claimed the $9,681.91 equity in the house as exempt under the federal "wild card" exemption. The schedules provide that he was surrendering the house subject to his exemption claim in the perceived equity. Lazdowski's testimony on this point at hearing was ambivalent, at best, however. For example, he testified that he was merely seeking an appraisal of the house at the time he signed the listing agreement. The listing agreement is not ambiguous. On March 25, 2005, the date he entered into the listing agreement with Century 21, Lazdowski clearly agreed to sell the house for $68,000. The Court considers his actions at and proximate to the time of the bankruptcy filing to be consistent with his intentions on March 25, 2005. Thus, regardless of the bankruptcy filing, and Century 21's ignorance of the filing, Century 21 was certainly acting within its rights and obligations under the agreement in attempting to procure a buyer for the house. It is undisputed that Century 21 successfully procured a buyer in accordance with the listing agreement.

The Court looks to Texas law to determine if Century 21 earned its commission and is therefore entitled to an unsecured claim in this bankruptcy given Lazdowski's change of heart

regarding the sale.

In *Goodwin v. Gunter*, the Texas Supreme Court stated that a broker earns his commission upon procuring a buyer. *See Goodwin*, 109 Tex. 56, 185 S.W. 295, 296-97 (1916). The court said "[i]t is a general doctrine that in order for a broker to be entitled to commissions under a contract stipulating for their payment in the event of his sale . . . , a purchaser must have been produced through his efforts, ready, able, and willing to buy the property upon the contract terms; otherwise the contract is not fulfilled upon the broker's part and the commissions are therefore not earned." *Id*. Consummating a sale, however, is not required for a commission to become payable.

> A broker's legal right to a commission must arise from a contract, ordinarily his contract with the seller of real property. . . . Unless the parties expressly contract otherwise, the broker is entitled to a commission *at the time* he procures a buyer ready, willing, and able to make an enforceable contract to purchase the seller's property on terms acceptable to him. If an enforceable contract results between buyer and seller, . . . the fact that the contract is never carried out does not defeat the broker's legal right to a commission.

*Callaway v. Overholt*, 796 S.W.2d 828, 832 (Tex. App.–Austin 1990) (emphasis in original).

Texas courts have routinely held that commissions are earned under these circumstances. A licensed real estate broker, who is authorized to sell real property under a valid listing agreement, is entitled to the commission specified in the agreement when he or she produces a purchaser who is ready, willing and financially able to purchase the property under the terms of the listing agreement. *Cooper v. Wildman*, 528 S.W.2d 80, 84 (Tex. Civ. App.– Corpus Christi 1975, no writ). A realtor who produces a purchaser who is able and willing to buy on the seller's terms is entitled to his commission if completion of the sale is prevented by the seller. *Stiles v. DeAngelo*, 706 S.W.2d 175, 177 (Tex. App. –Fort Worth 1986, no writ). The right to a

commission is earned when the broker procures, within the time period of the listing agreement, a purchaser who is ready, willing, and able to purchase the property upon the terms contained in the listing agreement or upon terms and price agreeable to the owner. *Star Supply Co. v. Jones*, 665 S.W.2d 194, 197 (Tex. App.–San Antonio 1984, no writ).

The listing agreement between Lazdowski and Century 21 states the commission is considered earned when the "[b]roker . . . procures a buyer ready, willing, and able to buy the Property at the Listing Price or at any other price acceptable to Seller." Accordingly, once Jerry George, agent for Century 21, procured the sales contract with Michael Greener for the full listing price, Century 21 had completed performance necessary to earn its commission.

Lazdowski contends that his or the chapter 7 trustee's failure to timely assume or reject the listing agreement, thereby deeming the agreement rejected, as well as his conversion to chapter 13, impacts the validity of Century 21's claim. The Court disagrees. The Court admits that the unique circumstances of this case may have created some confusion regarding the proper party with authority to sell the house. For example, given Lazdowski's claim of exemption to his share of the equity, was Lazdowski or the chapter 7 trustee the party charged with the responsibility of administering the asset? As set forth above, the trustee proceeded to administer and therefore go forward with the sale, which the Court believes was the proper and reasonable course of action. However, once the case was converted to chapter 13, Lazdowski was back in control. In either event, the Court fails to see how Century 21's right to its commission claim was somehow lost. Equity and good conscience dictate that Century 21's claim, at least as an unsecured claim, be allowed. 11 U.S.C. § 105. Even if the listing agreement is considered an executory contract, Century 21 obtained a buyer well before any possible deemed rejection of the

listing agreement.

As Century 21 seeks allowance of its claim as an unsecured claim, the Court need not address whether the claim is an administrative priority claim. The claim will be allowed as an unsecured claim in this chapter 13 case. The Court will prepare an order.

### End of Memorandum Opinion ###